Christopher T. Micheletti (SBN 136446)
Judith A. Zahid (SBN 215418)
Qianwei Fu (SBN 242669)
**ZELLE LLP**
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: (415) 693-0700
Facsimile: (415) 693-0770
cmicheletti@zelle.com
jzahid@zelle.com
qfu@zelle.com

James R. Martin (SBN 173329)
Jennifer Duncan Hackett (*pro hac vice forthcoming*)
**ZELLE LLP**
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Telephone: (202) 899-4100
jmartin@zelle.com
jhackett@zelle.com

*Attorneys for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. WILLIAM BLUMBERG, STACEY BAUM, CHAD KLEBS, AND SASCHA NELSON<br><br>Plaintiffs,<br><br>vs.<br><br>HEADWAY TECHNOLOGIES, INC., HUTCHINSON TECHNOLOGY INC., MAGNECOMP PRECISION TECHNOLOGY PUBLIC CO. LTD., NAT PERIPHERAL (DONG GUAN) CO., LTD., NAT PERIPHERAL (H.K.) CO., LTD., NHK SPRING CO., LTD., NHK INTERNATIONAL CORPORATION, NHK SPRING (THAILAND) CO., LTD., SAE MAGNETICS (H.K.) LTD., AND TDK CORPORATION,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..............................................................................................1

II.     JURISDICTION AND VENUE .......................................................................2

III.    THE PARTIES ...................................................................................................3

        A.      Plaintiffs .................................................................................................3

        B.      NHK Defendants ....................................................................................4

        C.      TDK DEFENDANTS ..............................................................................5

        D.      Agents and Co-Conspirators .................................................................6

IV.     INTERSTATE TRADE AND COMMERCE ...................................................7

V.      FACTUAL ALLEGATIONS ............................................................................7

        A.      HDDs and Suspension Assemblies ........................................................7

        B.      Structural Characteristics of the Markets Facilitated Effective Collusion..............9

            1.      Market Consolidation and Concentration ...................................9

            2.      Market Concentration on the "Buy" Side .................................11

            3.      Interrelated Business Relationships .........................................12

            4.      High Barriers to Entry..............................................................12

            5.      Market Maturity and Declining Demand ..................................13

            6.      Homogeneity of Products .........................................................13

            7.      No Close Substitutes/Inelastic Demand....................................14

        C.      Chain of Distribution/Sale ..................................................................14

VI.     DEFENDANTS' UNLAWFUL AGREEMENT .............................................16

        A.      Government Investigations ..................................................................16

        B.      The Alleged Conspiracy Proximately Caused Plaintiffs to Pay Overcharges .......18

VII.    CLASS ACTION ALLEGATIONS .................................................................20

        A.      Class Definitions..................................................................................20

VIII.   PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY ....................23

IX.     PLAINTIFFS' CLAIMS ARE TIMELY........................................................25

A.    Plaintiffs and Members of the Classes Had No Knowledge or Inquiry Notice of the Conspiracy ............................................................25

B.    Fraudulent Concealment Tolled the Statute of Limitations ...................................25

X.    FIRST CLAIM FOR RELIEF:  VIOLATION OF SECTION 1 OF THE SHERMAN ACT (NATIONWIDE INJUNCTIVE CLASS) ............................................................26

XI.    SECOND CLAIM FOR RELIEF:  VIOLATION OF SECTION 1 OF THE SHERMAN ACT (CLAYTON ACT DAMAGES CLASS) ..............................................28

XII.    THIRD CLAIM FOR RELIEF:    VIOLATION OF STATE ANTITRUST STATUTES (STATE-LAW DAMAGES CLASS) ............................................................30

XIII.    FOURTH CLAIM FOR RELIEF:    VIOLATION OF STATE CONSUMER PROTECTION STATUTES ............................................................48

XIV.    FIFTH CLAIM FOR RELIEF: UNJUST ENRICHMENT .............................................78

XV.    PRAYER FOR RELIEF ............................................................79

XVI.    DEMAND FOR JURY TRIAL ............................................................80

# I.    **INTRODUCTION**

1.      Plaintiffs, J. William Blumberg, Stacey Baum, Chad Klebs, and Sascha Nelson, on behalf of themselves and on behalf of classes of all those similarly situated in the United States, bring this action on behalf of American consumers who were victimized by a long-running conspiracy among Defendants to artificially inflate the price of Hard Disk Drive ("HDD") suspension assemblies ("Suspension Assemblies").  HDDs are a common storage device sold as stand-alone devices and used in a variety of applications such as desktop computers, laptop computers, gaming devices, servers, and enterprise and hyperscale storage systems (collectively, "Finished Products").  Plaintiffs and class members indirectly purchased HDD Suspension Assemblies as part of their Finished Products purchases during the period beginning at least as early as May 2008 until such time as the anticompetitive effects of Defendants' conduct on United States consumers of such product ceased (the "Class Period").

2.      The fact of the price-fixing conspiracy is not in doubt.  Defendant NHK Spring Co., Ltd. ("NHK") has pleaded guilty to a violation of the Sherman Act for NHK's participation in the conduct.  The conspiracy, which lasted from at least May 2008 through at least April 2016 (the "Conspiracy Period"), consisted of a continuing agreement among Defendants to (1) refrain from competing on prices for, (2) fix the price of, and (3) allocate their respective market shares for Suspension Assemblies.[1]

3.      There is similarly no question that the conspiracy harmed American consumers.  In announcing the plea, Assistant Attorney General Makan Delrahim of the Antitrust Division of the United States Department of Justice ("DOJ") said the "impact on American consumers and businesses is

---

[1] Information, *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich. July 29, 2019), *available at* https://www.justice.gov/opa/press-release/file/1188586/download (incorporated by reference into this Complaint); *see also* Rule 11 Plea Agreement ("Plea Agreement"), *United States of America v. D-1; NHK Springs Co., Ltd.*, Case No. 2:19-cr-20503-MAG-DRG (E.D. Mich. July 26, 2019), ECF No. 15.

direct and substantial."[2]   As alleged below, Plaintiffs' claims arise from the effect of the conspiracy on domestic U.S. commerce.

## II.   JURISDICTION AND VENUE

4.      This action is instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 26, to obtain damages for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and an injunction to prevent further unlawful conduct, and under the laws of various states that have enacted laws to protect their residents from antitrust, unfair competition, and consumer protection violations.

5.      The Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1337.

6.      The Court has subject matter jurisdiction over the state law claims (a) under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy, (b) pursuant to the Class Action Fairness Act of 2005, and (c) under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state."

7.      Venue is proper in this Judicial District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391 because one or more of the Defendants resided, transacted business, was found, or had agents in, this District, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial portion of the affected portion of the interstate trade and commerce described below has been carried out in this District.

8.      This Court has personal jurisdiction over each of the Defendants because each Defendant, either directly or through the ownership or control of its United States subsidiaries: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of HDD Suspension Assemblies throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this

---

[2] Press Release, U.S. Dep't of Justice, *Japanese Manufacturer Agrees to Plead Guilty to Fixing Prices for Suspension Assemblies Used in Hard Disk Drives* (July 29, 2019), *available at* https://tinyurl.com/yx8mroau (incorporated by reference into this Complaint).

CLASS ACTION COMPLAINT

District; and/or (d) was engaged in an illegal antitrust conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants conduct business throughout the United States, including in this District, and they have purposefully availed themselves of the laws of the United States.

9. The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on international commerce and the interstate commerce of the United States. Defendants' activities had a direct, substantial and reasonably foreseeable effect on U.S. commerce.[3]

10. Defendants' collusive conduct was intended to, and did, cause injury to Plaintiffs and the Classes, who purchased HDDs and Finished Products containing Suspension Assemblies manufactured and sold by Defendants. Defendants expressly aimed their conspiracy at the U.S. marketplace and their collusive conduct has resulted in an adverse effect on purchasers of HDDs and Finished Products in each state identified in this Complaint.

### III.    THE PARTIES

**A.    Plaintiffs**

11. Plaintiff J. William Blumberg is a resident of Maryland. During the Class Period, Mr. Blumberg purchased directly from Dell a computer containing Suspension Assemblies manufactured by at least one Defendant and was thus injured in his business or property as a result of Defendants' unlawful conduct alleged in this Complaint.

12. Plaintiff Stacey Baum is a resident of Maryland. During the Class Period, Ms. Baum purchased directly from Apple an iMac computer containing Suspension Assemblies manufactured by

---

[3] Information, ¶ 10 (The conspiracy exerted a "direct, substantial, and reasonably foreseeable effect on interstate and import trade and commerce, including in HDD suspension assemblies and certain hard disk drives incorporating affected HDD suspension assemblies, all in violation of 15 U.S.C. §1.").

1    at least one Defendant, and thus was injured in her business or property as a result of Defendants'

2    unlawful conduct alleged in this Complaint.

3        13.    Plaintiff Chad Klebs is a resident of Minnesota.  During the Class Period, Mr. Klebs

4    purchased multiple portable external HDDs containing Suspension Assemblies manufactured by at least

5    one Defendant and was thus injured in his business or property as a result of Defendants' unlawful

6    conduct alleged in this Complaint.

7        14.    Plaintiff Sascha Nelson is a resident of Maryland.  During the Class Period, Ms. Nelson

8    purchased directly from Dell three computers containing Suspension Assemblies manufactured by at

9    least one Defendant, and thus was injured in her business or property as a result of Defendants' unlawful

10    conduct alleged in this Complaint.

11    **B.    NHK Defendants**

12        15.    Defendant NHK Spring Co., Ltd. ("NHK Spring") is a Japanese corporation with its

13    principal place of business located at 3-10 Fukuura, Kanazawa-ku, Yokohama, 236-0004, Japan.

14    During the Conspiracy Period, NHK Spring manufactured, marketed, sold and/or distributed

15    Suspension Assemblies for sale in, or for delivery to, the United States and elsewhere.

16        16.    Defendant NHK International Corporation ("NHK International") is a U.S. subsidiary

17    established by NHK Spring in October 1976, with its principal place of business located at 46855

18    Magellan Drive, Novi, Michigan 48377.  During the Conspiracy Period, NHK International supplied,

19    serviced, and/or sold Suspension Assemblies for sale in, or for delivery to, the United States and

20    elsewhere.

21        17.    Defendant NHK Spring (Thailand) Co., Ltd. ("NHK Thailand") is a Thailand-based

22    subsidiary of NHK Spring, with its principal place of business located at Bangna Tower A, 6th-7th floor

23    2/3 Moo 14, Bangna-Trad Rd., (km. 6.5), Bangkaew, Bangplee, Samutprakarn 10540 Thailand.  During

24    the Conspiracy Period, NHK Thailand manufactured and/or supplied Suspension Assemblies for sale in,

25    or for delivery to, the United States and elsewhere.

26        18.    Defendant NAT Peripheral (Dong Guan) Co., Ltd. ("NAT DongGuan") is a China-

27    based subsidiary of NHK Spring, with its principal place of business located at Conrad Hi-Tech Park,

28

Shangsha, ZhenAn Road, ChangAn Town, Dongguan, Guangdong, 523830 China. During the

Conspiracy Period, NAT DongGuan manufactured and/or supplied Suspension Assemblies for sale in,

or for delivery to, the United States and elsewhere.

19.    Defendant NAT Peripheral (H.K.) Co., Ltd. ("NAT H.K.") is a China-based subsidiary

wholly owned by NHK Spring, with its principal place of business located at Suite 15b-17, 9/F, Tower 3,

China Hong Kong City, 33 Canton Rd., T.S.T., Kowloon, Hong Kong, China. During the Conspiracy

Period, NAT H.K. manufactured and/or supplied Suspension Assemblies for sale in, or for delivery to,

the United States and elsewhere.

### C.    TDK DEFENDANTS

20.    Defendant TDK Corporation ("TDK") is a Japanese corporation with its principal place

of business located at 2-5-1 Nihonbashi, Chuo-ku, Tokyo, 103-6128, Japan. TDK has a California-

based branch located at 1745 Technology Drive, Suite 200, San Jose, CA 95110. During the

Conspiracy Period, TDK manufactured, marketed and/or sold Suspension Assemblies for sale in, or for

delivery to, the United States and elsewhere.

21.    Defendant Magnecomp Precision Technology Public Co. Ltd. ("MPT") is a

Thailand-based subsidiary of TDK, with its principal place of business located at 162 M.5 Phaholyothin

Road, T.Lamsai A.Wangnoi, Ayutthaya 13170, Thailand. During the Conspiracy Period, MPT

manufactured, marketed and/or sold Suspension Assemblies for sale in, or for delivery to, the United

States and elsewhere.

22.    Defendant SAE Magnetics (H.K.) Ltd. ("SAE Magnetics") is a China-based subsidiary

wholly owned by TDK, with its principal place of business located at 6 Science Park East Avenue,

Hong Kong Science Park, Hong Kong, China. During the Conspiracy Period, SAE Magnetics

manufactured and/or supplied Suspension Assemblies for sale in, or for delivery to, the United States

and elsewhere.

23.    Defendant Hutchinson Technology Inc. ("Hutchinson") is a Minnesota corporation with

its principal place of business located at 40 West Highland Park Drive NE, Hutchinson, Minnesota

55350. TDK acquired Hutchinson on October 6, 2016.[4] During the Conspiracy Period, Hutchinson manufactured, marketed and/or sold Suspension Assemblies, some from the United States, for sale in, or for delivery to, the United States and elsewhere.

24.     Defendant Headway Technologies, Inc. ("Headway") is a Delaware corporation wholly owned by TDK, with its principal place of business located at 682 South Hillview Drive, Milpitas, California 95035. Headway provides recording head products to the HDD industry and employs approximately 800 people in engineering, manufacturing and administration roles in Milpitas, California. During the Conspiracy Period, Headway manufactured and/or supplied Suspension Assemblies.

25.     The Information states that "[a]nother corporation and various individuals, not made defendants in this Information, participated as co-conspirators in the offense charged in this Information and performed acts and statements in furtherance of it."[5] On information and belief, TDK (including the subsidiaries, affiliates, and acquisitions listed above) is that corporation.

**D.    Agents and Co-Conspirators**

26.     On information and belief, other corporations, partnerships, or business entities, currently unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraints of trade. Various persons that are not named as Defendants have participated as co-conspirators in the violations alleged in this Complaint and have performed acts and made statements in furtherance thereof.

27.     These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to fix the prices of, and allocate market shares for, Suspension Assemblies. Plaintiffs reserves the right to name some or all of these entities as Defendants at a later date.

---

[4] *TDK Corporation Announces Completion of Hutchinson Acquisition*, TDK Global (Oct. 6, 2016), *available at* https://www.tdk.com/corp/en/news_center/press/201610062540.htm; TDK 2016 Annual Report, at 46, *available at* https://tinyurl.com/y3a3vyg5.

[5] Information, ¶ 2.

1

## IV.    INTERSTATE TRADE AND COMMERCE

2      28.    Throughout the Conspiracy Period, Defendants manufactured Suspension Assemblies

3  outside the United States and sold those Suspension Assemblies for incorporation into HDDs and

4  Finished Products that were sold in, or for delivery to, the United States.[6]  Defendants knew that their

5  conduct would cause American purchasers of HDDs and Finished Products to pay higher prices.

6      29.    During the Conspiracy Period, Defendants collectively controlled the market for

7  Suspension Assemblies globally and in the United States.

8      30.    Defendants' unlawful activities, as described in this Complaint, took place within the

9  flow of interstate commerce to indirect purchasers of HDD Suspension Assemblies located in the United

10  States, including states other than the states in which Defendants are located, as well throughout the

11  world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international

12  commerce, including the United States markets for HDDs and Finished Products.  Plaintiffs' claims

13  arise from the conspiracy's anticompetitive effect in the United States.

## V.    FACTUAL ALLEGATIONS

15  **A.    HDDs and Suspension Assemblies**

16      31.    HDDs store digital content such as documents, pictures, music, videos, programs,

17  application preferences, and operating systems.  HDDs are sold as portable stand-alone devices or

18  incorporated into Finished Products.  During the Conspiracy Period, more than four billion units of

19

20

21

22

23

24

25

26

27  [6] Information, ¶ 5.

28

CLASS ACTION COMPLAINT

HDDs were shipped worldwide.[7]  On information and belief, of those four billion units, approximately 30% to 35% were sold in the United States as HDDs and/or in Finished Products.[8]

32.    HDDs use magnetic recording heads, similar to a phonograph arm but in a relatively fixed position, to read from and write onto rapidly spinning disks.[9]  Suspension Assemblies hold the recording heads in close proximity to the disks and provide the electrical connection from the recording heads to the HDDs' circuitry.[10]  Figure 1[11] below shows the physical structure of an HDD.



Figure 1.  Physical Structure of Hard Disk

---

[7] *See Worldwide Unit Shipments of Hard Disk Drives (HDD) from 1976 to 2022*, *available at* https://www.statista.com/statistics/398951/global-shipment-figures-for-hard-disk-drives/; *Market Views: Hard Drive Shipments Drop by Nearly 17% in 2015*, AnandTech (Mar. 2, 2016), *available at* https://www.anandtech.com/show/10098/market-views-2015-hard-drive-shipments; *Seagate and Western Digital Led the HDD Market Last Year*, Market Realist (Jun. 29, 2017), *available at* https://marketrealist.com/2017/06/seagate-and-western-digital-led-the-hdd-market-last-year/.

[8] *See, e.g.*, Seagate 2015 Annual Report, at 11, *available at* http://www.annualreports.com/HostedData/AnnualReportArchive/s/NASDAQ_STX_2015.pdf (reporting that approximately 27% of its revenues were generated from HDDs shipped to the Americas).

[9] Information, ¶ 4.

[10] Information, ¶ 4.

[11] Roger Wood, *Future Hard Disk Drive Systems*, Journal of Magnetism and Magnetic Materials, Vol. 321, Issue 6 (March 2009).

33.     A Suspension Assembly consists of three main components that are welded to each other: a base plate, a load beam, and a flexure, as shown in the exploded view in Figure 2[12] below.



Figure 2.  HDD Suspension Assembly

**B.     Structural Characteristics of the Markets Facilitated Effective Collusion**

34.     The structural characteristics of the market for Suspension Assemblies market are conducive to effective collusion.  These characteristics include high market concentration, interrelated business relationships, significant barriers to entry, maturity of the HDD Suspension Assembly market, product homogeneity, and inelasticity of demand.

*1.     Market Consolidation and Concentration*

35.     Throughout the Conspiracy Period, there were a limited number of HDD manufacturers.  From 2008-2011, there were five significant HDD makers: Western Digital Corporation ("Western Digital"), Seagate Technology, LLC ("Seagate"), Toshiba Electronics Devices & Storage

---

[12]  Kazemi M.R., *Suspension Assembly for Hard Disk Drive* (2013), in Wang Q.J., Chung Y.W. (eds) Encyclopedia of Tribology, *available at* https://link.springer.com/referenceworkentry/10.1007%2F978-0-387-92897-5_1140.

CLASS ACTION COMPLAINT
Case No. 3:18-cv-00184

Corporation ("Toshiba"), Hitachi Global Storage Technologies (HGST), and Samsung Electronics Co., Ltd. By 2012, that number had dwindled to three. Seagate acquired Samsung's HDD business in 2011 and Western Digital acquired HGST in 2012. As of 2017, estimated market shares for Seagate, Western Digital, and Toshiba were approximately 37%, 40%, and 23%.[13] Notwithstanding this concentration, these HDD producers characterized their markets as intensely competitive.[14]



Figure 3. 2017 Market Share Growth

36. As the HDD market became increasingly concentrated, the Suspension Assembly industry experienced a similar trend of consolidation. In 2005, Hutchinson held approximately 55% of the world market share and NHK Spring accounted for approximately 22% of the world market share in the Suspension Assembly industry.[15] MPT, created through the 2005 merger between the Data Storage

---

[13] *HDD Growth in Nearline Markets*, Forbes (Feb. 5, 2018), *available at* https://www.forbes.com/sites/tomcoughlin/2018/02/05/hdd-growth-in-nearline-markets/#2347c9b62997.

[14] *See, e.g.,* Seagate 2010 Annual Report, at 12 ("The markets that we compete in are intensely competitive"), *available at* http://www.annualreports.com/HostedData/AnnualReportArchive/s/NASDAQ_STX_2010.pdf.

[15] MPT 2005 Form 56-1, at 10, *available at* http://capital.sec.or.th/webapp/corp_fin/datafile/56/20050520E06.DOC.

CLASS ACTION COMPLAINT

Division of Magnecomp International Ltd. and KR Precision Public Company, occupied roughly 20% of the market.[16]

37.     Further consolidation took place shortly before and during the Conspiracy Period.  In 2007, TDK announced its acquisition of a majority share of Thailand-based MPT and began producing Suspension Assemblies following the acquisition.

38.     By 2012, TDK, NHK Spring, and Hutchinson collectively controlled 96% of the global suspension market.[17]  In October 2016, TDK acquired Hutchinson, increasing TDK's market share to 55-60%.  Following the acquisition, TDK and NHK became the world's only two primary producers of Suspension Assemblies.[18]  Even with this consolidation, producers of Suspension Assemblies had excess capacity throughout the Conspiracy Period.

### 2.     Market Concentration on the "Buy" Side

39.     The demand for Suspension Assemblies depends on the demand for HDDs which, in turn, is driven by the demand for Finished Products.  During the Conspiracy Period, consumer demand for electronic storage was driven by a proliferation of applications that required more and more storage.  For example, the inclusion of more and higher-resolution cameras in cell phones increased the demand for "cloud" storage capacity of the pictures taken by cell phone users.[19]

40.     All else equal, large buyers possess market power to negotiate lower prices from sellers.  Price-fixing conspiracies limit that market power.  The existence of a small number of large buyers

---

[16] *Id.*; News Release, KR Precision PCL, *KR Precision Implements New Management Structure and Appoints New Director, available at* http://www.idema.org/wp-content/downloads/1171.doc.

[17] Dr. R. Castellano, *The Dynamics of the HDD Industry and Its Impact on CMP*, at 9, *available at* https://nccavs-usergroups.avs.org/wp-content/uploads/CMPUG2012/CMP2012_9castellano.pdf.

[18] TDK Corporation 2017 Annual Report, at 45, *available at* https://www.tdk.com/ir/ir_library/annual/2017/html/index.html.

[19] *See, e.g.,* Seagate 2015 Annual Report, at 6-7, *available at* http://d18rn0p25nwr6d.cloudfront.net/CIK-0001137789/afb157bc-1d39-4e5e-94ed-41a3ee010ab9.pdf.

CLASS ACTION COMPLAINT

made it easier for Defendants to exchange pricing information and otherwise create, facilitate, and enforce market-allocation agreements.

### 3. Interrelated Business Relationships

41.     The Suspension Assembly industry has a close-knit nature whereby multiple business relationships between Defendants blurred the lines of competition and provided ample opportunity to collude.  These business relationships also created a unity of interest among Defendants so that the conspiracy was easier to implement and enforce than if such interrelationships did not exist.

42.     For example, until March of 2015, TDK and NHK Spring—two of the only three major competitors in the Suspension Assembly market—maintained a joint venture to manufacture Suspension Assemblies.  Specifically, TDK's wholly owned subsidiary SAE Magnetics operated a joint venture with NHK Spring in the Suspension Assembly manufacturing company NAT H.K.[20] Throughout the Conspiracy Period, SAE Magnetics was also one of Hutchinson's top three customers.[21] In addition, Defendants also cross-licensed each other's products, including Suspension Assemblies.[22]

### 4. High Barriers to Entry

43.     There are substantial barriers to entry in the market for Suspension Assemblies.  For example, in an annual report filed in 2008 with the U.S. Securities and Exchange Commission ("SEC"), Defendant Hutchinson stated, "we believe that the number of entities that have the technical capability and capacity for producing precision suspension assemblies or components in large volumes will remain

---

[20] *See TDK Subsidiary Dissolve Joint Venture of HDD Suspension Manufacturing Company*, *available at* https://www.tdk.com/corp/en/news_center/press/201504011768.htm; Hutchinson 2012 Form 10-K, at 4 ("Our principal competitors for suspension assemblies are Nihon Hatsujo Kabusikigaisha ('NHK'), Magnecomp Precision Technology Public Company Limited ('MPT'), a subsidiary of TDK Corporation, and NAT Peripheral (H.K.) Co., Ltd. (a joint venture of NHK and TDK Corporation).").

[21] *See, e.g.*, Hutchinson 2008 Form 10-K, at 5, 2012 Form 10-K, at 4, and 2015 Form 10-K, at 4. In 2015, Hutchinson's three largest customers were Western Digital, Seagate, and SAE Magnetics, representing 52%, 27%, and 16% of net sales, respectively.

[22] *See Hutchison*, *Magnecomp Drop Lawsuits, Cooperate,* Minneapolis/St. Paul Business Journal (Dec. 3, 2001), *available at* https://www.bizjournals.com/twincities/stories/2001/12/03/daily8.html.

small."[23]  HDD producers insisted on Suspension Assembly sellers with substantial capacity capable of providing "just in time" delivery.  Any potential new Suspension Assembly entrant would not only have to incur the substantial costs required to build a production facility capable of meeting the demands of HDD producers, but that new entrant would also have to take sales away from an incumbent supplier at one of the handful of HDD producers.

44.    Collectively, Defendants owned the majority of patents for Suspension Assemblies. These patents potentially placed a significant and costly burden on potential new entrants, which must avoid infringing on the patents when entering the market with a new product.

### 5.    *Market Maturity and Declining Demand*

45.    There is declining demand in the HDD Suspension Assembly market, characterized by slim profit margins, which creates a motivation to collude.  Demand for HDDs and therefore for Suspension Assemblies experienced a general downward trend during the Conspiracy Period.  This makes the formation of an effective collusive arrangement more likely because it provides a greater incentive to firms to avoid price competition.

46.    In addition, increased demand for other types of data storage technology, such as those that utilize solid state storage or flash memory, has limited growth opportunities for HDD-based storage.

### 6.    *Homogeneity of Products*

47.    Suspension Assemblies are commodity-like products which are interchangeable at the design stage among products of the same type and across manufacturers.  In other words, in soliciting bids for Suspension Assemblies, HDD manufacturers can choose from all Suspension Assembly manufacturers.  One Defendant's product for a particular application, such as a particular type/size of disk drive (e.g., 2.5" notebook HDD form factor or 3.5" desktop HDD form factor), is substitutable for another Defendant's product during the design phase.

---

[23] Hutchinson 2008 Form 10-K, at 6; *see also* Hutchinson 2015 Form 10-K, at 4.

CLASS ACTION COMPLAINT

1

### 7.    No Close Substitutes/Inelastic Demand

2        48.    The market for HDDs and Finished Products were "inelastic," which means that

3    purchasers will not turn to other products or reduce their purchase volume in response to price increases.

4    **C.    Chain of Distribution/Sale**

5        49.    Defendants manufacture and sell Suspension Assemblies to HDD manufacturers, which

6    in turn manufacture HDDs and then sell HDDs as stand-alone devices through distributors and retailers

7    (approximately 30% of sales) and as inputs in Finished Products to OEMs (approximately 70% of

8    sales).[24]  The chain of distribution for Finished Products is graphically depicted below.

9

10
11



Figure 4.  Chain of Distribution

12

13

14        50.    HDD manufacturers operated, and purchased Suspension Assemblies, overseas during

15    the Class Period.[25]  For example, in 2015 Hutchinson reported some $250 million in revenues, all but

16    $12 million of which was based on Hutchinson's sale of Suspension Assemblies.  Of those $250 million

17    in sales, $40 million were made to "foreign-based enterprises" and $202 million were made to foreign

18    subsidiaries of U.S. corporations that used Suspension Assemblies in their offshore manufacturing sites.

19

20

21    [24] For example, from 2013-15, Seagate sold approximately 70% of its HDDs to Original
     Equipment Manufacturers ("OEMs"), 17-20% to distributors, and the remainder to retailers.
22    Seagate 2015 Annual Report, at 11.

23    [25] On its website, Western Digital states that it "only manufactures internal and external hard
     drives in Malaysia and Thailand."  *See* WD Safe Buying Guide for Brand Protection, *available*
24    *at* https://support-en.wd.com/app/answers/detail/a_id/28313.  Seagate manufactured hard drives
     in China and Thailand.  *See* A. Shilov, *Seagate to Shut Down One of Its Largest HDD Assembly*
25    *Plants, AnandTech* (Jan. 13, 2017), *available at* https://tinyurl.com/y5y57oyq.  Toshiba
     manufactured HDDs in Phillippines and China.  *See* T. Coughlin, *Western Digital and Toshiba*
26    *Sign Agreement to Swap HDD Equipment and Facilities*, Forbes (Feb. 28, 2012), *available at*
     https://tinyurl.com/y3ddo5gr; *Toshiba to churn out world-leading hard drive in Philippines*,
27    Nikkei Asian Rev. (Feb. 17, 2018), *available at* https://tinyurl.com/y6jcsjrm.

28

1    In other words, all or virtually all of Hutchinson's sales were overseas.  The remaining Defendants

2    similarly sold Suspension Assemblies almost entirely overseas.

3    51.    HDD manufacturers sold HDDs as stand-alone products[26] and to OEMs of Finished

4    Products.  OEMs included, *inter alia*, Dell, Hewlett-Packard ("HP"),[27] Lenovo, IBM, and Apple.  Dell,

5    IBM, and HP were also the dominant manufacturers and sellers of enterprise and "hyperscale" storage

6    systems.  During the Conspiracy Period, HDD manufacturers competed for a limited number of major

7    HDD customers (the OEMs).

8    52.    HDD manufacturers sold HDDs in the United States and elsewhere.  On information

9    and belief, HDD manufacturers purchased Suspension Assemblies outside the United States through

10    their foreign subsidiaries/affiliates and incorporated Suspension Assemblies into HDDs for import into

11    the United States.[28]  On information and belief, U.S.-based OEMs purchased HDDs through foreign

12    subsidiaries/affiliates and incorporated those HDDs into finished products outside the United States.

13    53.    OEMs sold their finished products in the United States and elsewhere.  On information

14    and belief, the foreign affiliates/subsidiaries of OEMs shipped finished products to their U.S.-based sales

15    arms pursuant to intercompany transfer policies (in which the U.S.-based companies determined the

16    transfer prices they paid to their foreign affiliates).  United States companies and individuals, like

17    Plaintiffs, then purchased the finished products in the United States from the OEM's U.S.-based sales

18

19

---

20    [26] The HDD manufacturers sold stand-alone products to consumers directly and through
       distributors and resellers.

21
22    [27] Dell and HP were among the largest purchasers of HDDs.  For example, in its 2015 Annual
       Report, Seagate stated that Dell and HP accounted for approximately 14% and 12%,
       respectively, of its consolidated revenue.  Seagate 2015 Annual Report, at 11.  Seagate further

23    stated that HDD makers competed for a limited number of major HDD customers.  *Id.*

24    [28] For example, in its 2015 Annual Report, Western Digital stated that nearly 80% of its revenue
       was generated from international sales, including sales to foreign subsidiaries of U.S. companies.

25    Western Digital 2015 Annual Report, at 12, *available at* http://investor.wdc.com/financial-
       information/annual-reports.  In its 2009 Annual Report Hutchinson stated that approximately

26    93% of its Suspension Assemblies were to customers in Thailand, Hong Kong and the People's
       Republic of China.  Hutchinson 2009 Form 10-K, at 6, *available at*

27    https://www.sec.gov/Archives/edgar/data/772897/000119312509249392/d10k.htm.

28

affiliate.  As such, for most U.S.-based OEMs, their overcharges arise, in whole or in part, from overseas purchases of Suspension Assemblies., in whole or in part.

## VI.    DEFENDANTS' UNLAWFUL AGREEMENT

54.    From at least as early as May 2008 and continuing until at least April 2016, Defendants conspired to suppress competition among them.

55.    To carry out their conspiracy, Defendants:

a.    engaged in discussions, and attended meetings, in which they reached, and refined, agreements to refrain from competing on prices for, fix the prices of, and allocate their respective market shares for Suspension Assemblies to be sold in the United States and elsewhere;

b.    exchanged Suspension Assembly pricing information, including anticipated pricing quotes, in the United States and elsewhere;

c.    relied on the agreements identified above and used the exchange of pricing information to inform their negotiations with U.S.-based and foreign customers that purchased Suspension Assemblies and produced HDDs for sale in, or for delivery to, the United States and elsewhere;

d.    sold price-fixed Suspension Assemblies in, or for delivery to, the United States; and

e.    accepted payment for price-fixed Suspension Assemblies sold in, or for delivery to, the United States and elsewhere at artificially inflated prices.

56.    The fact of the conspiracy is established by NHK's agreement to plead guilty to a Sherman Act Section 1 violation.  The details of the conspiracy are known only to Defendants, their current and former employees, and government enforcers.

### A.    Government Investigations

57.    In July 2016, the Japanese Fair Trade Commission ("JFTC") raided Defendants TDK and NHK based on suspicion that the two companies and or their subsidiaries had colluded to fix the prices for HDD suspension components.  On February 9, 2018, the JFTC issued a cease and desist order

1   to both Defendants, finding that they substantially restrained competition in the Suspension Assemblies

2   market by agreeing to maintain sale prices.  The JFTC also imposed a ¥1.1 billion (approximately $9.9

3   million) surcharge on the two companies.[29]

4       58.     Concurrently with the JFTC investigation, the DOJ reportedly opened an investigation

5   into price-fixing in the market for Suspension Assemblies.  On July 26, 2016, Defendant Hutchinson

6   reportedly received a letter from the DOJ requesting documents relating to the investigation.

7   Hutchinson reportedly agreed to fully cooperate with the DOJ's investigation.[30]  At the time

8   Hutchinson received the DOJ's letter, TDK's pending acquisition of Hutchinson was under review by

9   the U.S. Federal Trade Commission.[31]

10      59.     In April 2018, the Brazilian antitrust authority Administrative Council for Economic

11  Defense ("CADE") launched an investigation into allegations that producers colluded to fix prices in the

12  market for HDD components between 2003 and 2016.  Companies being investigated include

13  Hutchinson, MPT, NHK Spring, TDK, and SAE Magnetics.  At least 38 individuals were also being

14  investigated.[32]

15      60.     According to the CADE, "there is strong evidence that the cartel agreed prices in

16  response to client quotations, divided markets, shared commercially and competition sensitive

17  information mainly in respect of current and proposed prices for Suspension Assemblies, private bids of

18  _____

19  [29] See JFTC Press Release, *The JFTC Issued a Cease and Desist Order and Surcharge Payment Orders to the Manufacturers of Suspension for Hard Disk Drives* (Feb. 9, 2018), *available at*

20  https://www.jftc.go.jp/en/pressreleases/yearly-2018/February/180209.html (English version), https://www.jftc.go.jp/houdou/pressrelease/h30/feb/180209_1.html (Japanese version).

21  [30] See *Hutchinson Technology Provides Update on Legal and Regulatory Actions*,

22  GlobeNewswire (July 27, 2016), *available at* https://www.globenewswire.com/news-release/2016/07/27/859501/0/en/Hutchinson-Technology-Provides-Update-on-Legal-and-

23  Regulatory-Actions.html.

24  [31] *Id*.

25  [32] See CADE Press Release, *CADE's General Superintendence Probes Cartel in the Global Market for Hard Disk Components* (Apr. 26, 2018), *available at* http://en.cade.gov.br/cades-

26  general-superintendence-probes-cartel-in-the-global-market-for-hard-disk-components-1; *see also* CADE's General Superintendent Coordination of Antitrust Analysis 4/2018 (SEI No.

27  0459666), *available at* http://en.cade.gov.br/.

28

clients, allocation of client demand, production capacity of each company and a usage fee structure with the purpose of stabilizing prices and reducing competition in the sale of Suspension Assemblies."[33]

**B.    The Alleged Conspiracy Proximately Caused Plaintiffs to Pay Overcharges**

61.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception; it is the rule."[34]

62.    As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers. . . . Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[35]

63.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of HDD Suspension Assemblies and, as a direct and foreseeable result, the price of products containing HDD Suspension Assemblies. Several factors are relevant to the existence and amount of pass-through effects.

---

[33] CADE's General Superintendent Coordination of Antitrust Analysis 4/2018 (SEI No. 0459666), *available at* http://en.cade.gov.br/.

[34] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979)

[35] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106 (Cal. Sup. Ct. Aug. 29, 2000).

64.     First, it is well established that producers of a product will pass through variable cost increases (as opposed to increases in fixed costs) to avoid lost profits.[36] Here, Suspension Assemblies were important variable costs for HDD producers.[37]

65.     Second, it is well established that producers of a product will pass through cost increases in inelastic markets.[38] Here, the markets for HDDs and Finished Products were inelastic. Demand in the market for HDDs was derived from consumer demand for HDDs and Finished Products. Sellers of HDDs could therefore pass through cost increases without fear of losing sales. Similarly, makers of Finished Products could pass through cost increases without fear of losing sales.

66.     Third, it is well established that where there is an industry-wide overcharge, competing purchasers will generally pass through overcharges.[39] Here, the markets for HDDs and Finished Products were highly competitive. In addition, Defendants' conduct was not directed at just one HDD purchasers. Defendants sought to, and did, extract an industrywide overcharge. As a result, HDD makers passed through the market-wide overcharges they paid for Suspension Assemblies, and Finished

---

[36] *See, e.g.*, European Commission, Guidelines for national courts on how to estimate the share of overcharge which was passed on to the indirect purchaser (July 1, 2019) ("Guidelines"), at 18, *available at* https://ec.europa.eu/competition/antitrust/actionsdamages/quantification_en.html. Variable costs are those that change with the level of output, e.g. raw materials. Fixed costs are those that stay constant whatever the quantity of goods or services produced, e.g. rent. Economic theory recognizes that sellers ordinarily take variable costs into account in making price-setting decisions. *Id.* at 45.

[37] *See, e.g.*, Seagate 2015 Annual Report, at 24 (identifying Suspension Assemblies as among handful of "particularly important" cost components for HDDs).

[38] Guidelines at 18. An inelastic market is one in which prices do not significantly affect consumer demand for a product.

[39] Guidelines at 18. In a hypothetical scenario in which a cartel targets just one purchaser, that purchaser would have to decide whether consumers would switch to its competitors in response to a price increase passed on by that purchaser. By contrast, when the overcharge is imposed on all purchasers, they all bear similar cost increases which makes it more attractive for each of those purchasers to pass-through those increased costs. *Id.; see also* George Kosicki and Miles B. Cahill, *Economics of cost pass through and damages in indirect purchaser antitrust cases*, The Antitrust Bulletin, Vol. 51, No.3/Fall 2006 at 623 ("When all firms in an industry experience a cost increase and start to increase prices, the reduction in quantity suffered by any particular firm will be less than if it had to raise price in an environment where all other competitor prices are constant.")

Product manufacturers passed the market-wide overcharges they paid for HDDs through to their customers.

67.     Finally, it is established that firms are more likely to pass through non-transitory price increases.  Here, the alleged conspiracy increased prices for Suspension Assemblies over an eight-year period.  These were not transitory increases.

68.     The precise amount of the overcharge impacting the prices of products containing HDD Suspension Assemblies can be measured and quantified.  Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution.  Thus, the economic harm to Plaintiffs and class members can be quantified.

69.     By reason of the violations of the antitrust law alleged in this Complaint, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for HDD Suspension Assemblies than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined.

## VII.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

70.     Plaintiffs bring this action individually and as a class action pursuant to the provisions of Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief pursuant to Section 16 of the Clayton Act on behalf of the following class (the "Nationwide Injunctive Class"):

> All persons and entities who, during the Class Period, indirectly purchased a product not for resale which included one or more HDD Suspension Assemblies that were manufactured or sold by the Defendants, any current or former subsidiary of the Defendants, or any co-conspirator of the Defendants.

71.     Plaintiffs also bring this action individually and as a class action pursuant to the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, seeking damages pursuant to Sections 4 of the Clayton Act on behalf of the following class (the "Clayton Act Damages Class"):

CLASS ACTION COMPLAINT

1

2

3

> All persons and entities who, during the Class Period, directly purchased an HDD or Finished Product[40] not for resale, in the United States from a seller located outside the United States, or a seller in the United States that acquired the HDD or Finished Product outside the United States from that seller's foreign affiliate.

4    72.    Plaintiffs further bring this action individually and as a class action pursuant to Rule

5  23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust,

6  unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf

7  of the following class (the "State-Law Damages Class"):[41]

8

9

> All persons and entities who, during the Class Period, in the Indirect Purchaser States who purchased an HDD or Finished Product not for resale.

10    73.    Excluded from the State-Law Damages Class are members of any certified class

11  asserting Clayton Act damages claims.  In the event the Clayton Act damages claims are dismissed or a

12  Clayton Act Damages Class is not certified, the exclusion is not applicable.

13    74.    Excluded from the Nationwide Injunctive Class, the Clayton Act Damages Class, and

14  the State-Law Damages Class are Defendants, their parent companies, subsidiaries and affiliates, any co-

15  conspirators, federal governmental entities and instrumentalities of the federal government, states and

16  their subdivisions, agencies and instrumentalities.

17    75.    This action has been brought and may properly be maintained as a class action pursuant

18  to Rule 23 of the Federal Rules of Civil Procedure for the following reasons.

19    76.    The Classes are ascertainable and there is a well-defined community of interest among

20  members of the Classes.

21

22

23  [40] For purposes of class definitions, HDDs and Finished Products refers only to products that

24  incorporated a Suspension Assembly made or sold by Defendants.

25  [41] The Indirect Purchaser States are the states listed in the Third and Fourth Claims for Relief. These states are: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Iowa,

25  Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi,

26  Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North

27  Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

28

CLASS ACTION COMPLAINT

77.     Based upon the nature of trade and commerce involved and the number of purchasers of Suspension Assemblies by the proposed Classes, the number of class members is very large, and therefore joinder of all class members is not practicable.

78.     Plaintiffs' claims are typical of class members' claims because Plaintiffs indirectly purchased HDD Suspension Assemblies manufactured by one or more Defendants or their co-conspirators, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Classes.

79.     The following common questions of law or fact, among others, exist as to the members of the Classes:

a.     Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Suspension Assemblies;

b.     The identity of the participants of the alleged conspiracy;

c.     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.     Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and members of the Classes;

e.     Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

f.     Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and members of the Classes;

g.     Whether Defendants' conduct proximately caused a market-wide overcharge for the sale of Suspension Assemblies during the Class Period;

h.     The effect of the alleged conspiracy on the prices of HDDs and Finished Products sold in the United States during the Class Period.

CLASS ACTION COMPLAINT

i.      For the Clayton Act Damages Class, the appropriate measure of class wide damages presents a common question of fact and law.

j.      For the State-Law Damages Class, the appropriate measure of class-wide damages presents a common question of fact and law.

80.     These and other questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

81.     After determination of the predominant common issues identified above, if necessary and appropriate, the Classes can be further divided into logical and manageable subclasses.

82.     Plaintiffs will fairly and adequately protect the interests of the Classes in that Plaintiffs have no interests that are antagonistic to other members of the Classes and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent them and the Classes.

83.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged class members is impractical.

84.     The damages suffered by the individual class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation.  Thus, absent the availability of class action procedures it would not be feasible for class members to redress the wrongs done to them.  Even if the class members could afford individual litigation, the court system could not.  Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and the court system.  Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision in a single court;

85.     In the absence of this putative class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## VIII.    PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

86.     Defendants' price-fixing conspiracy had the following effects, among others:

1              a.        Price competition was restrained or eliminated with respect to Suspension

2  Assemblies;

3              b.        The prices of Suspension Assemblies were fixed, raised, maintained, or

4  stabilized at artificially inflated levels;

5              c.        United States consumers of HDDs and Finished Products were deprived

6  of the benefits of free and open competition with respect to Suspension Assemblies; and

7              d.        During the Conspiracy Period, Plaintiffs and the members of the Classes

8  paid artificially inflated prices for HDDs and Finished Products.

9       87.     The markets for Suspension Assemblies, HDDs, and Finished Products are inextricably

10  linked.  Suspension Assemblies are manufactured solely for use in the manufacture of HDDs.

11  Conversely, HDDs require Suspension Assemblies.  Finished Products require storage solutions, which

12  are provided by HDDs or "flash memory" technology.

13       88.     Suspension Assemblies are identifiable, discrete physical products that remain

14  essentially unchanged when incorporated into an HDD.  Similarly, HDDs are identifiable, discrete

15  physical products that remain essentially unchanged when incorporated into a Finished Product.  As a

16  result, Suspension Assemblies follow a traceable physical chain of distribution from the Defendants to

17  Plaintiffs and the members of the Classes, and costs attributable to Suspension Assemblies can be traced

18  through the chain of distribution to Plaintiffs and the members of the Classes.

19       89.     Just as Suspension Assemblies can be physically traced through the supply chain, so can

20  their prices be traced to show that overcharges extracted by Defendants were passed through to Plaintiffs

21  and similarly situated members of the Classes.

22       90.     As shown above, makers of HDDs and Finished Products passed the overcharges

23  extracted by Defendants in the sale of price-fixed Suspension Assemblies through to Plaintiffs and all

24  similarly situated buyers.  The amount of that overcharge and pass-through rate will be established

25  through expert testimony applied to pricing data from Defendants, HDD producers, and OEMs, but the

26  fact of the overcharge and pass-through cannot be reasonably disputed.  Indeed, economic theory holds

27  that pass-through rates for markets with inelastic demand are often in the range of 100%.

28

# IX.    PLAINTIFFS' CLAIMS ARE TIMELY

## A.    Plaintiffs and Members of the Classes Had No Knowledge or Inquiry Notice of the Conspiracy

91.    Plaintiffs and members of the Classes had no knowledge of the combination or conspiracy alleged in this Complaint, or of facts sufficient to place them on inquiry notice of the claims set forth in this Complaint.

92.    Plaintiffs and members of the Classes are consumers who purchased HDDs containing Suspension Assemblies for their own use and not for resale.  No information in the public domain was available to Plaintiffs and members of the Classes prior to July 26, 2016.  Moreover, Plaintiffs and members of the Classes had no direct contact or interaction with the Defendants and had no means from which they could have discovered that the Defendants were engaged in the combination and conspiracy alleged in this Complaint before July 26, 2016.

93.    This Complaint alleges a continuing course of conduct (including conduct within the applicable limitations periods), and Defendants' unlawful conduct has inflicted continuing and accumulating harm within the applicable statutes of limitations.

94.    Each time Defendants engaged in an unlawful act complained of here, Defendants undertook an overt act that has inflicted harm on Plaintiffs and other members of the Classes.

95.    Because Defendants have engaged in a continuing course of conduct, Plaintiffs' claims are timely.

## B.    Fraudulent Concealment Tolled the Statute of Limitations

96.    In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted in this Complaint by Plaintiffs and the Classes.  Plaintiffs and members of the Classes did not discover and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged in this Complaint until July 26, 2016, the date that the JFTC's raid on Defendants TDK and NHK became public.

97.    Before that time, Plaintiffs and members of the Classes were unaware of Defendants' unlawful conduct and did not know before then that they were paying artificially inflated prices for

Suspension Assemblies throughout the United States during the Conspiracy Period.  No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

98.     By its very nature, the Defendants' and their co-conspirators' anticompetitive conspiracy was inherently self-concealing.  Suspension Assemblies are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the Suspension Assemblies industry to be a competitive industry.   Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Suspension Assemblies prices before July 26, 2016.

99.     Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed, until July 26, 2016.

100.     For these reasons, the statute of limitations applicable to Plaintiffs' class claims was tolled and did not begin to run until July 26, 2016 at the earliest.

## X.     FIRST CLAIM FOR RELIEF:  VIOLATION OF SECTION 1 OF THE SHERMAN ACT (NATIONWIDE INJUNCTIVE CLASS)

101.     Plaintiffs Blumberg, Baum, Klebs, and Nelson assert this claim pursuant to Section 16 of the Clayton Act on behalf the Nationwide Injunctive Class.

102.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

103.     Beginning at a time unknown to Plaintiffs, but at least as early as May 2008, through at least April 2016, the exact dates being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the United States, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

CLASS ACTION COMPLAINT

104.    The acts done by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

105.    The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of HDD Suspension Assemblies they sold in the United States and elsewhere.

106.    The anticompetitive acts were intentionally directed at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and/or fixing prices for HDD Suspension Assemblies throughout the United States.

107.    The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD Suspension Assemblies.

108.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Injunctive Class who purchased HDD Suspension Assemblies have been harmed by being forced to pay inflated, supra-competitive prices for HDD Suspension Assemblies.

109.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth in this Complaint.

110.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    Plaintiffs and members of the Nationwide Class who purchased HDD Suspension Assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

111. Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

112. The alleged contract, combination, or conspiracy is a *per se* violation of Section 1 of the Sherman Act.

113. Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged in this Complaint.

**XI.** **SECOND CLAIM FOR RELIEF: VIOLATION OF SECTION 1 OF THE SHERMAN ACT (CLAYTON ACT DAMAGES CLASS)**

114. Plaintiffs Blumberg, Baum, and Nelson assert this claim pursuant to Section 4 of the Clayton Act on behalf the Clayton Act Damages Class.

115. Beginning at a time unknown to Plaintiffs, but at least as early as May 2008, through at least April 2016, the exact dates being unknown to Plaintiffs and exclusively within the knowledge of Defendants, Defendants and their co-conspirators, entered into a continuing agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

116. The acts done by the Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

117. The contract, combination or conspiracy consisted of a continuing agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of HDD Suspension Assemblies they sold in the United States and elsewhere.

118. The anticompetitive acts were intentionally directed at the United States market for HDD Suspension Assemblies and had a substantial and foreseeable effect on interstate commerce by raising and/or fixing prices for HDD Suspension Assemblies throughout the United States.

119.    The conspiratorial acts and combinations have caused unreasonable restraints in the markets for HDD Suspension Assemblies.

120.    As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Clayton Act Damages Class who purchased HDD Suspension Assemblies have been harmed by being forced to pay inflated, supra-competitive prices for HDD Suspension Assemblies (including through purchases of HDDs and Finished Products).

121.    In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth in this Complaint.

122.    Defendants' conspiracy had the following effects, among others:

(a)    Price competition in the market for HDD Suspension Assemblies has been restrained, suppressed, and/or eliminated in the United States;

(b)    Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)    Plaintiffs and members of the Clayton Act Damages Class who purchased HDD Suspension Assemblies indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

123.    Plaintiffs and members of the Clayton Act Damages Class have been injured and will continue to be injured in their business and property by paying more for HDD Suspension Assemblies purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

124.    The alleged contract, combination, or conspiracy is a *per se* violation of Section 1 of the Sherman Act.

125.    Plaintiffs and members of the Clayton Act Damages Class have standing to seek damages pursuant to Section 4 of the Clayton Act because they were the first United States victims to pay overcharges arising from the domestic effects of the conspiracy.

126.     Plaintiffs and members of the Clayton Act Damages Class are entitled to damages in an amount to be trebled to the extent federal antitrust laws permit.

## XII.   THIRD CLAIM FOR RELIEF:
## VIOLATION OF STATE ANTITRUST STATUTES (STATE-LAW DAMAGES CLASS)

127.     Plaintiffs Blumberg, Baum, Klebs, and Nelson[42] assert these state-law claims on behalf of the State-Law Damages Class.

128.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

129.     During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of HDD Suspension Assemblies in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

130.     Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and to allocate customers with respect to HDD Suspension Assemblies.

131.     Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

132.     Defendants unlawful agreement violated the **Arizona Uniform State Antitrust Act**, Ariz. Rev. Stat. §§ 44-1401, *et seq*.

(a)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated, which increased the prices of HDDs and Finished Products throughout Arizona; (2) Plaintiffs and members of the Class were deprived of the benefits of free and open competition;

---

[42] Plaintiffs Baum, Blumberg, and Nelson plead these state-law claims in the alternative to their claims pursuant to Section 4 of the Clayton Act, in the event that the Court disagrees that, as first-level U.S. purchasers, they are entitled to recover damages under Section 4 of the Clayton Act.

CLASS ACTION COMPLAINT

and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDDs and Finished Products.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property.

(d)     Accordingly, Plaintiffs and members of the Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

133.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **California Cartwright Act**, Cal. Bus. & Prof. Code § 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of the California Cartwright Act. Defendants, each of them, have acted in violation of the Cartwright Act to fix, raise, stabilize, and maintain prices of, and allocate markets for, HDD Suspension Assemblies at supra-competitive levels.

(b)     The aforesaid violations of the Cartwright Act, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, HDD Suspension Assemblies.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) fixing, raising, stabilizing, and pegging the price of HDD Suspension Assemblies; and (2) allocating among themselves the production of HDD Suspension Assemblies.

(d)     The combination and conspiracy alleged in this Complaint has had, *inter alia*, the following effects: (1) Price competition in the sale of HDD Suspension Assemblies

CLASS ACTION COMPLAINT

has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for HDD Suspension Assemblies sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased HDD Suspension Assemblies directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property in that they paid more for HDD Suspension Assemblies than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of the Cartwright Act, Plaintiffs and members of the Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

134.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the **District of Columbia Antitrust Act**, D.C. Code § 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

CLASS ACTION COMPLAINT

1      (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

2      trade in violation of D.C. Code § 28-4501, *et seq.*  Accordingly, Plaintiffs and members

3      of the Class seek all forms of relief available under D.C. Code § 28-4501, *et seq.*

4      135.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

5      the **Hawaii Antitrust Act**, Haw. Rev. Stat. § 480-4.

6      (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

7      Suspension Assemblies price competition was restrained, suppressed, and eliminated

8      throughout Hawaii; (2)  HDD Suspension Assemblies prices were raised, fixed,

9      maintained and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and

10      members of the Class were deprived of free and open competition; and (4) Plaintiffs and

11      members of the Class paid supra-competitive, artificially inflated prices for HDD

12      Suspension Assemblies.

13      (b)    During the Class Period, Defendants' illegal conduct substantially affected Hawaii

14      commerce.

15      (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

16      members of the Class have been injured in their business and property and are threatened

17      with further injury.

18      (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

19      trade in violation of Haw. Rev. Stat. § 480-4.  Accordingly, Plaintiffs and members of

20      the Class seek all forms of relief available under the Hawaii Antitrust Act.

21      136.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

22      the **Iowa Competition Law**, Iowa Code § 553.1, *et seq.*

23      (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

24      Suspension Assemblies price competition was restrained, suppressed, and eliminated

25      throughout Iowa; (2)  HDD Suspension Assemblies prices were raised, fixed,

26      maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and

27      members of the Class were deprived of free and open competition; and (4) Plaintiffs and

28

CLASS ACTION COMPLAINT

1    members of the Class paid supra-competitive, artificially inflated prices for HDD

2    Suspension Assemblies.

3    (b)    During the Class Period, Defendants' illegal conduct substantially affected Iowa

4    commerce.

5    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

6    members of the Class have been injured in their business and property and are threatened

7    with further injury.

8    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

9    trade in violation of Iowa Code §§ 553.1, *et seq.*  Accordingly, Plaintiffs and members

10    of the Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

11    137.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

12    the **Kansas Restraint of Trade Act**, Kan. Stat. Ann. § 50-101, *et seq.*

13    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

14    Suspension Assemblies price competition was restrained, suppressed, and eliminated

15    throughout Kansas; (2) HDD Suspension Assemblies prices were raised, fixed,

16    maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and

17    members of the Class were deprived of free and open competition; and (4) Plaintiffs and

18    members of the Class paid supra-competitive, artificially inflated prices for HDD

19    Suspension Assemblies.

20    (b)    During the Class Period, Defendants' illegal conduct substantially affected Kansas

21    commerce.

22    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

23    members of the Class have been injured in their business and property and are threatened

24    with further injury.

25    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

26    trade in violation of Kan. Stat. Ann. § 50-101, *et seq.*  Accordingly, Plaintiffs and

27

28

CLASS ACTION COMPLAINT

1    members of the Class seek all forms of relief available under Kan. Stat. Ann. § 50-101,

2    *et seq.*

3    138.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

4    the **Maine Antitrust Statute**, Me. Rev. Stat. Ann. tit. 10, § 1101, *et seq.*

5    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

6        Suspension Assemblies price competition was restrained, suppressed, and eliminated

7        throughout Maine; (2) HDD Suspension Assemblies prices were raised, fixed,

8        maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and

9        members of the Class were deprived of free and open competition; and (4) Plaintiffs and

10        members of the Class paid supra-competitive, artificially inflated prices for HDD

11        Suspension Assemblies.

12    (b)    During the Class Period, Defendants' illegal conduct substantially affected Maine

13        commerce.

14    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

15        members of the Class have been injured in their business and property and are

16        threatened with further injury.

17    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

18        trade in violation of Me. Rev. Stat. Ann. tit. 10, § 1101, *et seq.* Accordingly, Plaintiffs

19        and members of the Class seek all relief available under the statute.

20    139.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

21    the **Maryland Antitrust Act**, Md. Code Ann., Com. Law § 11-201, *et seq.*

22    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

23        Suspension Assemblies price competition was restrained, suppressed, and eliminated

24        throughout Maryland; (2) HDD Suspension Assemblies prices were raised, fixed,

25        maintained and stabilized at artificially high levels throughout Maryland; (3) Plaintiffs

26        and members of the Damages Class were deprived of free and open competition; and

27

28

(4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Md. Code Ann., Com. Law § 11-201, *et seq.*  Accordingly, Plaintiff and members of the Damages Class seek all relief available under Md. Code Ann., Com. Law § 11-201, *et seq.*

140.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Michigan Antitrust Reform Act**, Mich. Comp. Laws § 445.771, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mich. Comp. Laws § 445.771, *et seq.*  Accordingly,  Plaintiffs  and

1    members of the Class seek all relief available under Mich. Comp. Laws § 445.771, *et*

2    *seq*.

3    141.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

4    the **Minnesota Antitrust Law**, Minn. Stat. § 325D.49, *et seq*.

5    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

6           Suspension Assemblies price competition was restrained, suppressed, and eliminated

7           throughout Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed,

8           maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs

9           and members of the Class were deprived of free and open competition; and (4) Plaintiffs

10          and members of the Class paid supra-competitive, artificially inflated prices for HDD

11          Suspension Assemblies.

12   (b)    During the Class Period, Defendants' illegal conduct substantially affected Minnesota

13          commerce.

14   (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

15          members of the Class have been injured in their business and property and are threatened

16          with further injury.

17   (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

18          trade in violation of Minn. Stat. § 325D.49, *et seq*. Accordingly, Plaintiffs and

19          members of the Class seek all relief available under Minn. Stat. § 325D.49, *et seq*.

20   142.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

21   the **Mississippi Antitrust Statute**, Miss. Code Ann. § 75-21-1, *et seq*.

22   (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

23          Suspension Assemblies price competition was restrained, suppressed, and eliminated

24          throughout Mississippi; (2) HDD Suspension Assemblies prices were raised, fixed,

25          maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs

26          and members of the Class were deprived of free and open competition; and (4) Plaintiffs

27

28

and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Miss. Code Ann. § 75-21-1, *et seq*. Accordingly, Plaintiffs and members of the Class seek all relief available under Miss. Code Ann. § 75-21-1, *et seq*.

143.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Nebraska Junkin Act**, Neb. Rev. Stat. § 59-801, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Neb. Rev. Stat. § 59-801, *et seq*.  Accordingly, Plaintiffs and members of the Class seek all relief available under the Junkin Act.

CLASS ACTION COMPLAINT

144.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Nevada Unfair Trade Practices Act**, Nev. Rev. Stat. § 598A.010, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nev. Rev. Stat. § 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under Nev. Rev. Stat. § 598A.010, *et seq.*

145.    Defendants have entered into an unlawful agreement in restraint of trade in violation of **New Hampshire's Antitrust Statute**, N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire;(2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

CLASS ACTION COMPLAINT

1    (b)    During the Class Period, Defendants' illegal conduct substantially affected New

2    Hampshire commerce.

3    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

4    members of the Class have been injured in their business and property and are threatened

5    with further injury.

6    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

7    trade in violation of N.H. Rev. Stat. Ann. tit. XXXI, § 356:1, *et seq.*  Accordingly,

8    Plaintiffs and members of the Class seek all relief available under the statute.

9    146.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

10    the **New Mexico Antitrust Act**, N.M. Stat. § 57-1-1, *et seq.*

11    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

12    Suspension Assemblies price competition was restrained, suppressed, and eliminated

13    throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed,

14    maintained and stabilized at artificially high levels throughout New Mexico; (3)

15    Plaintiffs and members of the Class were deprived of free and open competition; and (4)

16    Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices

17    for HDD Suspension Assemblies.

18    (b)    During the Class Period, Defendants' illegal conduct substantially affected New Mexico

19    commerce.

20    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

21    members of the Class have been injured in their business and property and are threatened

22    with further injury.

23    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

24    trade in violation of N.M. Stat. § 57-1-1, *et seq.*  Accordingly, Plaintiffs and members of

25    the Class seek all relief available under N.M. Stat. § 57-1-1, *et seq.*

26    147.    Defendants have entered into an unlawful agreement in restraint of trade in violation of

27    the **New York Donnelly Act**, N.Y. Gen. Bus. Law, § 340, *et. seq.*

28

CLASS ACTION COMPLAINT

1      (a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies when they purchased HDDs containing HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, § 340, *et seq.* The conduct set forth above is a *per se* violation of the Act.  Accordingly, Plaintiffs and members of the Class seek all relief available under New York Gen. Bus. Law § 340, *et seq.*

148.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **North Carolina General Statutes**, N.C. Gen. Stat. § 75-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained  and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

CLASS ACTION COMPLAINT

1    (b)    During the Class Period, Defendants' illegal conduct substantially affected North

2            Carolina commerce.

3    (c)    As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and

4            members of the Class have been injured in their business and property and are threatened

5            with further injury.

6    (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade

7            in violation of N.C. Gen. Stat. § 75-1, *et seq.*  Accordingly, Plaintiffs and members of the

8            Class seek all relief available under N.C. Gen. Stat. § 75-1, *et. seq.*

9    149.   Defendants have entered into an unlawful agreement in restraint of trade in violation of

10   the **North Dakota Uniform State Antitrust Act**, N.D. Cent. Code § 51-08.1, *et seq.*

11   (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

12           Suspension Assemblies price competition was restrained, suppressed, and eliminated

13           throughout North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed,

14           maintained and stabilized at artificially high levels throughout North Dakota; (3)

15           Plaintiffs and members of the Class were deprived of free and open competition; and (4)

16           Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices

17           for HDD Suspension Assemblies.

18   (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on North

19           Dakota commerce.

20   (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

21           members of the Class have been injured in their business and property and are threatened

22           with further injury.

23   (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade

24           in violation of N.D. Cent. Code § 51-08.1, *et seq.* Accordingly, Plaintiffs and members

25           of the Class seek all relief available under the statute.

26   150.   Defendants have entered into an unlawful agreement in restraint of trade in violation of

27   the **Oregon Antitrust Law**, Or. Rev. Stat. § 646.705, *et seq.*

28

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Or. Rev. Stat. § 646.705, *et seq.* Accordingly, Plaintiffs and members of the Class seek all relief available under Or. Rev. Stat. § 646.705, *et seq.*

151.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Rhode Island Antitrust Act**, R.I. Gen. Laws §§ 6-36-1, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce.

CLASS ACTION COMPLAINT

1   (c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

2      members of the Class have been injured in their business and property and are threatened

3      with further injury.

4   (d)  By reason of the foregoing, Defendants have entered into agreements in restraint of

5      trade in violation of R.I. Gen. Laws §§ 6-36-1, *et seq.*  Accordingly, Plaintiffs and

6      members of the Class seek all relief available under R.I. Gen. Laws §§ 6-36-1, *et seq.*

7   152.  Defendants have entered into an unlawful agreement in restraint of trade in violation of

8 the **South Dakota Antitrust Statute**, S.D. Codified Laws § 37-1-3.1, *et seq.*

9   (a)  Defendants' combinations or conspiracies had the following effects: (1) HDD

10      Suspension Assemblies price competition was restrained, suppressed, and eliminated

11      throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed,

12      maintained and stabilized at artificially high levels throughout South Dakota; (3)

13      Plaintiffs and members of the Class were deprived of free and open competition; and (4)

14      Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices

15      for HDD Suspension Assemblies.

16   (b)  During the Class Period, Defendants' illegal conduct had a substantial effect on South

17      Dakota commerce.

18   (c)  As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

19      members of the Class have been injured in their business and property and are threatened

20      with further injury.

21   (d)  By reason of the foregoing, Defendants have entered into agreements in restraint of

22      trade in violation of S.D. Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs

23      and members of the Class seek all relief available under S.D. Codified Laws Ann. §§

24      37-1, *et seq.*

25   153.  Defendants have entered into an unlawful agreement in restraint of trade in violation of

26 the **Tennessee Trade Practices Act**, Tenn. Code Ann. § 47-25-101, *et seq.*

27

28

CLASS ACTION COMPLAINT

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)     As a direct and proximate result of the Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

(d)     Accordingly, Plaintiffs and members of the Class seek all relief available under Tenn. Code Ann. § 47-25-101, *et seq*.

154.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Utah Antitrust Act**, Utah Code Ann. § 76-10-911, *et seq*.

(a)     Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

CLASS ACTION COMPLAINT

1

2

3

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

4

5

6

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Ann. § 76-10-3101, *et seq*. Accordingly, Plaintiffs and members of the Class seek all relief available under the Utah Antitrust Act.

7

8

155.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the **West Virginia Antitrust Act**, W. Va. Code § 47-18-1, *et seq*.

9

10

11

12

13

14

15

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

16

17

(b)      During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

18

19

20

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured in their business and property and are threatened with further injury.

21

22

23

(d)      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of W. Va. Code § 47-18-1, *et seq*.  Accordingly, Plaintiffs and members of the Class seek all relief available under W. Va. Code § 47-18-1, *et seq*.

24

25

156.      Defendants have entered into an unlawful agreement in restraint of trade in violation of the **Wisconsin Antitrust Act**, Wis. Stat. § 133.01, *et seq*.

26

27

(a)      Defendants' combinations or conspiracies had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated

28

1    throughout Wisconsin; (2) HDD Suspension Assemblies prices were raised, fixed,

2    maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs

3    and members of the Class were deprived of free and open competition; and (4) Plaintiffs

4    and members of the Class paid supra-competitive, artificially inflated prices for HDD

5    Suspension Assemblies.

6    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on

7    Wisconsin commerce.

8    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

9    members of the Class have been injured in their business and property and are threatened

10   with further injury.

11   (d)    By reason of the foregoing, Defendants have entered into agreements in restraint of

12   trade in violation of Wis. Stat. § 133.01, *et seq.*  Accordingly, Plaintiffs and members of

13   the Class seek all relief available under Wis. Stat. § 133.01, *et seq.*

14   157.    Plaintiffs and members of the Class in each of the above states have been injured in their

15   business and property by reason of Defendants' unlawful combination, contract, conspiracy and

16   agreement.  Plaintiffs and members of the Class have paid more for HDD Suspension Assemblies than

17   they otherwise would have paid in the absence of Defendants' unlawful conduct.  This injury is of the

18   type the antitrust laws of the above states were designed to prevent and flows from that which makes

19   Defendants' conduct unlawful.

20   158.    In addition, Defendants have profited significantly from the aforesaid conspiracy.

21   Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of

22   Plaintiffs and the members of the Class.

23   159.    Accordingly, Plaintiffs and the members of the Class in each of the above jurisdictions

24   seek damages (including statutory damages where applicable), to be trebled or otherwise increased as

25   permitted by a  particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys'

26   fees, to the extent permitted by the above state laws.

27

28

1

## XIII.   FOURTH CLAIM FOR RELIEF:
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES

2

3        160.    Plaintiffs Blumberg, Baum, Klebs, and Nelson[43] assert these state-law claims on behalf

4    of the State-Law Damages Class.

5        161.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

6        162.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

7    fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes

8    listed below.

9        163.    Defendants have knowingly entered into an unlawful agreement in restraint of trade in

10   violation of the **Arkansas Deceptive Trade Practices Act**, Ark. Code Ann. § 4-88-101, *et seq.*

11        (a)    Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce

12               by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially

13               inflated levels, the prices at which HDD Suspension Assemblies were sold, distributed,

14               or obtained, which increased the prices of HDDs and Finished Products purchased by

15               Arkansas residents.

16        (b)    The aforementioned conduct on the part of the Defendants constituted

17               "unconscionable" and "deceptive" acts or practices in violation of Ark. Code Ann. § 4-

18               88-107(a)(10).

19        (c)    During the Class Period, Defendants' illegal conduct substantially affected Arkansas

20               commerce and consumers.

21        (d)    As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and

22               the members of the Class have been injured in their business and property and are

23               threatened with further injury.

24

25   ───────────────

26   [43] Plaintiffs Baum, Blumberg, and Nelson plead these state-law claims in the alternative to their
     claims pursuant to Section 4 of the Clayton Act, in the event that the Court disagrees that, as
27   first-level U.S. purchasers, they are entitled to recover damages under Section 4 of the Clayton
     Act.

28

1      (e)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices

2          in violation of Ark. Code Ann. § 4-88-107(a)(10) and, accordingly, Plaintiffs and the

3          members of the Class seek all relief available under Ark. Code Ann. § 4-88-113.

4      164.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or

5  fraudulent acts or practices in violation of the **California Unfair Competition Law**, Cal. Bus. & Prof.

6  Code § 17200, *et seq.* (the "UCL"):

7      (a)    During the Class Period, Defendants marketed, sold, or distributed HDD Suspension

8          Assemblies in California, and committed and continue to commit acts of unfair

9          competition, as defined by the UCL, by engaging in the acts and practices specified

10         above.

11     (b)    This claim is instituted pursuant to Sections 17203 and 17204 of the UCL, to obtain

12         restitution from these Defendants for acts, as alleged in this Complaint, that violated the

13         UCL.

14     (c)    The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as

15         alleged in this Complaint, constituted a common, continuous, and continuing course of

16         conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business

17         acts or practices within the meaning of the UCL, including, but not limited to, the

18         following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the

19         violations of the Cartwright Act, set forth above;

20     (d)    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as

21         described above, whether or not in violation of the Cartwright Act, and whether or not

22         concerted or independent acts, are otherwise unfair, unconscionable, unlawful or

23         fraudulent;

24     (e)    Defendants' acts or practices are unfair to consumers of HDD Suspension Assemblies

25         (or products containing them) in the State of California within the meaning of the UCL;

26     (f)    Defendants' acts and practices are fraudulent or deceptive within the meaning of the

27         UCL;

28

CLASS ACTION COMPLAINT

(g)     Plaintiffs and members of the Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices;

(h)     The illegal conduct alleged in this Complaint is continuing and there is no indication that Defendants will not continue such activity into the future;

(i)     The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiffs and the members of the Class to pay supra-competitive and artificially inflated prices for HDD Suspension Assemblies (or products containing them). Plaintiffs and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

165.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **District of Columbia Consumer Protection Procedures Act**, D.C. Code § 28-3901, *et seq.*

(a)     Plaintiffs and the Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in the District of Columbia.

CLASS ACTION COMPLAINT

(c)    The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for HDD Suspension Assemblies. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD Suspension Assemblies because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to sales of HDD Suspension Assemblies, including their illegal conspiracy to secretly fix the price of HDD Suspension Assemblies at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

(d)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Class were deprived of free and open competition; and (4) Plaintiffs and the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices

1               in violation of District of Columbia Code § 28-3901, et seq., and, accordingly, Plaintiffs

2               and members of the Class seek all relief available under the statute.

3       166.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

4 acts or practices in violation of the **Florida Deceptive and Unfair Trade Practices Act**, Fla. Stat. §§

5 501.201, *et seq.*

6       (a)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension

7               Assemblies price competition was restrained, suppressed, and eliminated throughout

8               Florida; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

9               stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the

10               Class were deprived of free and open competition; and (4) Plaintiffs and members of the

11               Class paid supra-competitive, artificially inflated prices for HDD Suspension

12               Assemblies.

13       (b)     During the Class Period, Defendants' illegal conduct substantially affected Florida

14               commerce and consumers.

15       (c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

16               members of the Class have been injured and are threatened with further injury.

17       (d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices

18               in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members

19               of the Class seek all relief available under that statute.

20       167.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

21 acts or practices in violation of the **Hawaii Unfair and Deceptive Trade Practices Act**, Haw. Rev.

22 Stat. § 480-2.

23       (a)     Plaintiffs and the Class purchased HDD Suspension Assemblies for personal, family, or

24               household purposes.

25       (b)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension

26               Assemblies price competition was restrained, suppressed, and eliminated throughout

27               Hawaii; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

28

CLASS ACTION COMPLAINT

1    stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the

2    Class were deprived of free and open competition; and (4) Plaintiffs and members of the

3    Class paid supra-competitive, artificially inflated prices for HDD Suspension

4    Assemblies.

5    (c)    During the Class Period, Defendants' illegal conduct substantially affected Hawaii

6    commerce and consumers.

7    (d)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

8    members of the Class have been injured and are threatened with further injury.

9    (e)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices

10    in violation of Haw. Rev. Stat. § 480-2 and, accordingly, Plaintiffs and members of the

11    Class seek all relief available under that statute.

12    168.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

13    acts or practices in violation of the **Massachusetts Consumer Protection Act**, Mass. G.L. c. 93A, §1,

14    *et seq.*

15    (a)    Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

16    (b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market

17    which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at

18    artificial and non-competitive levels, the prices at which HDD Suspension Assemblies

19    were sold, distributed, or obtained in Massachusetts and took efforts to conceal their

20    agreements from Plaintiffs and members of the Class.

21    (c)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension

22    Assemblies price competition was restrained, suppressed, and eliminated throughout

23    Massachusetts; (2) HDD Suspension Assemblies prices were raised, fixed, maintained,

24    and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and

25    members of the Class were deprived of free and open competition; and (4) Plaintiffs and

26    members of the Class paid supra-competitive, artificially inflated prices for HDD

27    Suspension Assemblies.

28

(d)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class were injured and are threatened with further injury.

(e)    By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their co-conspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Class to multiple damages.

(f)    Pursuant to Mass. Gen. Laws ch. 93A, §9, certain of the Defendants have or will be served with a demand letter, or, upon information and belief, such service of a demand letter was unnecessary due to the defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

169.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Michigan Consumer Protection Act**, Mich. Comp. Laws Ann. § 445.901, *et seq.*

(a)    Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Michigan.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Michigan, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Class.

(c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

CLASS ACTION COMPLAINT

(d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Michigan; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)    The foregoing acts and practices constituted unfair, unconscionable, or deceptive acts or practices in violation of the Michigan Consumer Protection Act.

(h)    As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and members of the Class seek all relief available under the Michigan Consumer Protection Act.

170.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Minnesota Consumer Fraud Act**, Minn. Stat. § 325F.68, *et seq.*

(a)    Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Minnesota.

(b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension

CLASS ACTION COMPLAINT

1   Assemblies were sold, distributed, or obtained in Minnesota, which conduct constituted

2   unfair practices in that it was unlawful under federal and state law, violated public

3   policy, was unethical, oppressive and unscrupulous, and caused substantial injury to

4   Plaintiffs and members of the Class.

5   (c)   Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs

6   and members of the Class concerning Defendants' unlawful activities and artificially

7   inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and

8   omitted facts would have been important to Plaintiffs and members of the Class as they

9   related to the cost of HDD Suspension Assemblies they purchased.

10  (d)   Defendants misrepresented the real cause of price increases and/or the absence of price

11  reductions in HDD Suspension Assemblies by making public statements that were not

12  in accord with the facts.

13  (e)   Defendants' statements and conduct concerning the price of HDD Suspension

14  Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs

15  and members of the Class to believe that they were purchasing HDD Suspension

16  Assemblies at prices established by a free and fair market.

17  (f)   Defendants' unlawful conduct had the following effects: (1) HDD Suspension

18  Assemblies price competition was restrained, suppressed, and eliminated throughout

19  Minnesota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

20  stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of

21  the Class were deprived of free and open competition; and (4) Plaintiffs and members of

22  the Class paid supra-competitive, artificially inflated prices for HDD Suspension

23  Assemblies.

24  (g)   As a direct and proximate result of the above-described unlawful practices, Plaintiffs

25  and members of the Class suffered ascertainable loss of money or property.

26  Accordingly, Plaintiffs and members of the Class seek all relief available under the

27  Minnesota Consumer Fraud Act.

28

CLASS ACTION COMPLAINT

171.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Missouri Merchandising Practices Act**, Mo. Rev. Stat. § 407.010, *et seq.*

(a)    Plaintiffs and the Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)    Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Missouri.

(c)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Class.

(d)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

(e)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(f)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

CLASS ACTION COMPLAINT

1        (g)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension

2        Assemblies price competition was restrained, suppressed, and eliminated throughout

3        Missouri; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and

4        stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of

5        the Class were deprived of free and open competition; and (4) Plaintiffs and members of

6        the Class paid supra-competitive, artificially inflated prices for HDD Suspension

7        Assemblies.

8        (h)      The foregoing acts and practices constituted unlawful practices in violation of the

9        Missouri Merchandising Practices Act.

10       (i)       As a direct and proximate result of the above-described unlawful practices, Plaintiffs

11       and members of the Class suffered ascertainable loss of money or property.

12       (j)      Accordingly, Plaintiffs and members of the Class seek all relief available under

13       Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which

14       prohibits "the act, use or employment by any person of any deception, fraud, false

15       pretense, false promise, misrepresentation, unfair practice or the concealment,

16       suppression, or omission of any material fact in connection with the sale or

17       advertisement of any merchandise in trade or commerce…," as further interpreted by

18       the Missouri Code of State Regulations, 15 CSR 60-7.010, et seq., 15 CSR 60-8.010, et

19       seq., and 15 CSR 60-9.010, et seq., and Mo. Rev. Stat. § 407.025, which provides for

20       the relief sought in this count.

21       172.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

22 acts or practices in violation of the **Montana Unfair Trade Practices Act,** Mont. Code, §§ 30-14-201

23 to -225.

24       (a)      Members of this Class purchased HDD Suspension Assemblies for personal, family, or

25       household purposes.

26       (b)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension

27       Assemblies price competition was restrained, suppressed, and eliminated throughout

28

Montana; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(c)     During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury.

(e)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-201 to -225, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

173.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Nebraska Consumer Protection Act**, Neb. Rev. Stat. § 59-1602, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury.

1  (d)  Defendants have engaged in unfair competition or unfair or deceptive acts or practices

2      in violation of Neb. Rev. Stat. § 59-1602, et seq., and, accordingly, Plaintiffs and

3      members of the Class seek all relief available under Neb. Rev. Stat. § 59-1614.

4  174.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

5 acts or practices in violation of the **Nevada Deceptive Trade Practices Ac**t, Nev. Rev. Stat. §

6 598.0903, *et seq.*

7  (a)  Defendants engaged in the conduct described in this Complaint in connection with the

8      sale of HDD Suspension Assemblies in trade or commerce in a market that includes

9      Nevada.

10  (b)  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or

11      maintain, at artificial and non-competitive levels, the prices at which HDD Suspension

12      Assemblies were sold, distributed, or obtained in Nevada, which conduct constituted

13      unfair practices in that it was unlawful under federal and state law, violated public

14      policy, was unethical, oppressive and unscrupulous, and caused substantial injury to

15      Plaintiffs and members of the Class.

16  (c)  Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs

17      and members of the Class concerning Defendants' unlawful activities and artificially

18      inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and

19      omitted facts would have been important to Plaintiffs and members of the Class as they

20      related to the cost of HDD Suspension Assemblies they purchased.

21  (d)  Defendants misrepresented the real cause of price increases and/or the absence of price

22      reductions in HDD Suspension Assemblies by making public statements that were not

23      in accord with the facts.

24  (e)  Defendants' statements and conduct concerning the price of HDD Suspension

25      Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs

26      and members of the Class to believe that they were purchasing HDD Suspension

27      Assemblies at prices established by a free and fair market.

28

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Nevada; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)     The foregoing acts and practices constituted deceptive trade practices in violation of the Nevada Deceptive Trade Practices Act.

(h)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and members of the Class seek all relief available under Nev. Rev. Stat. § 598.0993.

175.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **New Hampshire Consumer Protection Act**, N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Class have been injured and are threatened with further injury.

CLASS ACTION COMPLAINT

1    (d)   Defendants have engaged in unfair competition or unfair or deceptive acts or practices

2        in violation of N.H. Rev. Stat. Ann. tit. XXXI § 358-A, et seq., and, accordingly,

3        Plaintiffs and members of the Class seek all relief available under N.H. Rev. Stat. Ann.

4        tit. XXXI § 358-A:10 and 358A:10-a.

5    176.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

6 acts or practices in violation of the **New Mexico Unfair Practices Act**, N.M. Stat. § 57-12-1, *et seq.*

7    (a)   Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or

8        commerce by affecting, fixing, controlling and/or maintaining at non-competitive and

9        artificially inflated levels, the prices at which HDD Suspension Assemblies were sold,

10       distributed or obtained in New Mexico and took efforts to conceal their agreements

11       from Plaintiffs and members of the Class.

12    (b)   The aforementioned conduct on the part of Defendants constituted "unconscionable

13       trade practices," in violation of N.M. Stat. § 57-12-3, in that such conduct, inter alia,

14       resulted in a gross disparity between the value received by Plaintiffs and the members of

15       the Class and the prices paid by them for HDD Suspension Assemblies as set forth in

16       N.M. Stat. § 57-12-2E.  Plaintiffs were not aware of Defendants' price-fixing

17       conspiracy and were therefore unaware that they were being unfairly and illegally

18       overcharged.  There was a gross disparity of bargaining power between the parties with

19       respect to the price charged by Defendants for HDD Suspension Assemblies.

20       Defendants had the sole power to set that price and Plaintiffs had no power to negotiate

21       a lower price.  Moreover, Plaintiffs lacked any meaningful choice in purchasing HDD

22       Suspension Assemblies because they were unaware of the unlawful overcharge and

23       there was no alternative source of supply through which Plaintiffs could avoid the

24       overcharges.  Defendants' conduct with regard to sales of HDD Suspension

25       Assemblies, including their illegal conspiracy to secretly fix the price of HDD

26       Suspension Assemblies at supra-competitive levels and overcharge consumers, was

27       substantively unconscionable because it was one-sided and unfairly benefited

28

CLASS ACTION COMPLAINT

Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for HDD Suspension Assemblies.

(c)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, et seq., and, accordingly, Plaintiffs and the members of the Class seek all relief available under N.M. Stat. Ann. § 57-12-10.

177.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **New York Deceptive Acts and Practices Law**, N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Class.

CLASS ACTION COMPLAINT

(b)    Defendants and their co-conspirators made public statements about the prices of HDD Suspension Assemblies and products containing HDD Suspension Assemblies that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for HDD Suspension Assemblies and products containing HDD Suspension Assemblies; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased HDD Suspension Assemblies were misled to believe that they were paying a fair price for HDD Suspension Assemblies or the price increases for HDD Suspension Assemblies were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)    Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have an impact on New York consumers and not just the Defendants' direct customers.

(e)    Defendants knew that their unlawful trade practices with respect to pricing HDD Suspension Assemblies would have a broad impact, causing consumer class members who indirectly purchased HDD Suspension Assemblies to be injured by paying more for HDD Suspension Assemblies than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)    The conduct of the Defendants described in this Complaint constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout New York; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(h)    During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)    During the Class Period, each of the Defendants named in this Complaint, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in New York.

(j)    Plaintiffs and members of the Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

178.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **North Carolina Unfair Trade and Business Practices Act**, N.C. Gen. Stat. § 75-1.1, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Class.

(b)    Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts.  Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy.  Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could

not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants' public statements concerning the price of HDD Suspension Assemblies created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy.  Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)    The conduct of the Defendants described in this Complaint constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)    During the Class Period, Defendants marketed, sold, or distributed HDD Suspension Assemblies in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)    During the Class Period, each of the Defendants named in this Complaint, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed HDD Suspension Assemblies in North Carolina.

CLASS ACTION COMPLAINT

(g)     Plaintiffs and members of the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, et seq., and, accordingly, Plaintiffs and members of the Class seek all relief available under N.C. Gen. Stat. § 75-16.

179.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **North Dakota Unfair Trade Practices Law**, N.D. Cent. Code § 51-10, *et seq.*

(a)     Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes North Dakota.

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in North Dakota, which conduct constituted a fraudulent or deceptive act or practice and caused substantial injury to Plaintiffs and members of the Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs

CLASS ACTION COMPLAINT

1    and members of the Class to believe that they were purchasing HDD Suspension

2    Assemblies at prices established by a free and fair market.

3    (f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension

4    Assemblies price competition was restrained, suppressed, and eliminated throughout

5    North Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained,

6    and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and

7    members of the Class were deprived of free and open competition; and (4) Plaintiffs and

8    members of the Class paid supra-competitive, artificially inflated prices for HDD

9    Suspension Assemblies.

10    (g)    As a direct and proximate result of the above-described unlawful practices, Plaintiffs

11    and members of the Class suffered ascertainable loss of money or property.

12    Accordingly, Plaintiffs and the members of the Class seek all relief available under N.D.

13    Cent. Code § 51-10-06.

14    180.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

15    acts or practices in violation of the **Oregon Unlawful Trade Practices Act**, Or. Rev. Stat. § 646.605, *et*

16    *seq.*

17    (a)    Defendants engaged in the conduct described in this Complaint in connection with the

18    sale of HDD Suspension Assemblies in trade or commerce in a market that includes

19    Oregon.

20    (b)    Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or

21    maintain, at artificial and non-competitive levels, the prices at which HDD Suspension

22    Assemblies were sold, distributed, or obtained in Oregon, which conduct constituted

23    unlawful trade practices by employing unconscionable tactic in connection with the sale

24    of HDD Suspension Assemblies, and caused substantial injury to Plaintiffs and

25    members of the Class.

26    (c)    Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs

27    and members of the Class concerning Defendants' unlawful activities and artificially

28

CLASS ACTION COMPLAINT

inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)    Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Oregon; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)    As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and the members of the Class seek all relief available under Or. Rev. Stat. § 646.638.

181.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Rhode Island Unfair Trade Practice and Consumer Protection Act**, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)    Members of this Class purchased HDD Suspension Assemblies for personal, family, or household purposes.

(b)      Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Rhode Island.

(c)      Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence.  Defendants misrepresented to all consumers during the Class Period that Defendants' HDD Suspension Assemblies prices were competitive and fair.

(d)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)      As a direct and proximate result of the Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described in this Complaint.

(f)      Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of HDD Suspension Assemblies, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices set by a free and fair market.  Defendants' affirmative

1    misrepresentations and omissions constitute information important to Plaintiffs and

2    members of the Class as they related to the cost of HDD Suspension Assemblies they

3    purchased.

4    (g)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices

5    in violation of Rhode Island Gen. Laws. § 6- 13.1-1, et seq., and, accordingly, Plaintiffs

6    and members of the Class seek all relief available under that statute.

7    182.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

8    acts or practices in violation of **South Carolina Unfair Trade Practices Act**, S.C. Code Ann. § 39-5-

9    10, *et seq.*

10    (a)    Defendants' combinations or conspiracies had the following effects: (1) HDD

11    Suspension Assemblies price competition was restrained, suppressed, and eliminated

12    throughout South Carolina; (2) HDD Suspension Assemblies prices were raised, fixed,

13    maintained, and stabilized at artificially high levels throughout South Carolina; (3)

14    Plaintiffs and members of the Class were deprived of free and open competition; and (4)

15    Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices

16    for HDD Suspension Assemblies.

17    (b)    During the Class Period, Defendants' illegal conduct had a substantial effect on South

18    Carolina commerce.

19    (c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and

20    members of the Class have been injured in their business and property and are

21    threatened with further injury.

22    (d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices

23    in violation of S.C. Code Ann. §§ 39-5-10, et seq., and, accordingly, Plaintiffs and the

24    members of the Class seek all relief available under that statute.

25    183.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

26    acts or practices in violation of the **South Dakota Deceptive Trade Practices and Consumer**

27    **Protection Law**, S.D. Codified Laws § 37-24, *et seq.*

28

(a)     Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes South Dakota.

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in South Dakota, which conduct constituted a deceptive act or practice, and caused substantial injury to Plaintiffs and members of the Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

CLASS ACTION COMPLAINT

(g)  As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and the members of the Class seek all relief available under S.D. Codified Laws § 37-24-31.

184.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Utah Consumer Sales Practices Act**, Utah Code Ann. § 13-11-1, *et seq.*

(a)  Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Utah.

(b)  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Utah, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Class.

(c)  Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)  Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)  Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs

and members of the Class to believe that they were purchasing HDD Suspension
Assemblies at prices established by a free and fair market.

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension
Assemblies price competition was restrained, suppressed, and eliminated throughout
Utah; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and
stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the
Class were deprived of free and open competition; and (4) Plaintiffs and members of the
Class paid supra-competitive, artificially inflated prices for HDD Suspension
Assemblies.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs
and members of the Class suffered ascertainable loss of money or property.
Accordingly, Plaintiffs and the members of the Class seek all relief available under Utah
Code Ann. § 13-11-19(5) and 13-11-20.

185.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive
acts or practices in violation of the **Vermont Consumer Fraud Act**, Vt. Stat. Ann. tit. 9, § 2453, *et seq.*

(a)     Title 9 of the Vermont Statutes generally governs commerce and trade in Vermont.
Chapter 63 thereof governs consumer protection and prohibits, inter alia, unfair methods
of competition, unfair and deceptive trade acts and practices, and antitrust violations
such as restraints of trade and monopolization.  Vt. Stat. Ann. tit. 9, § 2453(a).

(b)     Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or
commerce in a market that includes Vermont by affecting, fixing, controlling, and/or
maintaining, at artificial and non-competitive levels, the prices at which HDD
Suspension Assemblies were sold, distributed, or obtained in Vermont.

(c)     Defendants deliberately failed to disclose material facts to Plaintiffs and members of the
Class concerning their unlawful activities and artificially inflated prices for HDD
Suspension Assemblies.  Defendants owed a duty to disclose such facts and considering
the relative lack of sophistication of the average, non-business purchaser, Defendants

CLASS ACTION COMPLAINT

Case No. 3:18-cv-00184

breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their HDD Suspension Assemblies prices were competitive and fair.

(d)      Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Vermont; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(e)      As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by the Defendants' willful and deceptive conduct, as described in this Complaint.

(f)      Defendants' deception, including their omissions concerning the price of HDD Suspension Assemblies, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing HDD Suspension Assemblies at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of the Vermont Consumer Fraud Act, and, accordingly, Plaintiffs and members of the Class seek all relief available under that statute.

186.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the **Virginia Consumer Protection Act**, Va. Code Ann. § 59.1-196, *et seq.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(a)     Defendants engaged in the conduct described in this Complaint in connection with the sale of HDD Suspension Assemblies in trade or commerce in a market that includes Virginia.

(b)     Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which HDD Suspension Assemblies were sold, distributed, or obtained in Virginia, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Class.

(c)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities and artificially inflated prices for HDD Suspension Assemblies. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Class as they related to the cost of HDD Suspension Assemblies they purchased.

(d)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in HDD Suspension Assemblies by making public statements that were not in accord with the facts.

(e)     Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)     Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Virginia; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of

CLASS ACTION COMPLAINT

1  the Class paid supra-competitive, artificially inflated prices for HDD Suspension

2  Assemblies.

3  (g)  As a direct and proximate result of the above-described unlawful practices, Plaintiffs

4    and members of the Class suffered ascertainable loss of money or property.

5    Accordingly, Plaintiffs and the members of the Class seek all relief available under Va.

6    Code Ann. § 59.1-204(A).

7  187.  Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive

8 acts or practices in violation of the **West Virginia Consumer Credit and Protection Ac**t, W. Va. Code

9 § 46A-6-101, *et seq.*

10  (a)  Defendants engaged in the conduct described in this Complaint in connection with the

11    sale of HDD Suspension Assemblies in trade or commerce in a market that includes

12    West Virginia.

13  (b)  Defendants and their co-conspirators agreed to, and did in fact affect, fix, control, and/or

14    maintain, at artificial and non-competitive levels, the prices at which HDD Suspension

15    Assemblies were sold, distributed, or obtained in West Virginia, which conduct

16    constituted unfair practices in that it was unlawful under federal and state law, violated

17    public policy, was unethical, oppressive and unscrupulous, and caused substantial injury

18    to Plaintiffs and members of the Class.

19  (c)  Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs

20    and members of the Class concerning Defendants' unlawful activities and artificially

21    inflated prices for HDD Suspension Assemblies.  The concealed, suppressed, and

22    omitted facts would have been important to Plaintiffs and members of the Class as they

23    related to the cost of HDD Suspension Assemblies they purchased.

24  (d)  Defendants misrepresented the real cause of price increases and/or the absence of price

25    reductions in HDD Suspension Assemblies by making public statements that were not

26    in accord with the facts.

27

28

CLASS ACTION COMPLAINT

(e)    Defendants' statements and conduct concerning the price of HDD Suspension Assemblies were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Class to believe that they were purchasing HDD Suspension Assemblies at prices established by a free and fair market.

(f)    Defendants' unlawful conduct had the following effects: (1) HDD Suspension Assemblies price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) HDD Suspension Assemblies prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Class were deprived of free and open competition; and (4) Plaintiffs and members of the Class paid supra-competitive, artificially inflated prices for HDD Suspension Assemblies.

(g)    As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Class suffered ascertainable loss of money or property. Accordingly, Plaintiffs and the members of the Class seek all relief available under W. Va. Code § 46A-6-106.

## XIV.    FIFTH CLAIM FOR RELIEF: UNJUST ENRICHMENT

188.    Plaintiffs Blumberg, Baum, Klebs, and Nelson[44] bring this claim on behalf of the State-Law Damages Class under the laws of all states listed in the Third and Fourth Claims, *supra*.

189.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

190.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of HDD Suspension Assemblies.

---

[44] Plaintiffs Blumberg, Baum, and Nelson plead these state-law claims in the alternative to their claims pursuant to Section 4 of the Clayton Act, in the event that the Court disagrees that, as first-level U.S. purchasers, they are entitled to recover damages under Section 4 of the Clayton Act.

CLASS ACTION COMPLAINT

191.   Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs and the members of the Class for HDD Suspension Assemblies.

192.   Plaintiffs and the members of the Class are entitled to a refund equal to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.  Plaintiffs and the members of the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Class may make claims on a *pro rata* basis.

193.   Pursuit of any remedies against the firms from which Plaintiffs and the members of the Class purchased HDDs containing HDD Suspension Assemblies subject to Defendants' conspiracy would have been futile.

## XV.   **PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully requests that:

194.   The Court determine that this action may be maintained as a class action under  Rule 23(a), (b)(2) and (b)(3) of the  Federal Rules of Civil Procedure,  and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

195.   That the unlawful conduct, contract, conspiracy, or combination alleged in this Complaint be adjudged and decreed:

a.   An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

b.   Plaintiffs and the members of the Classes suffered harm as a proximate result of the conduct alleged in this Complaint;

c.   Plaintiffs and the members of the Classes recover damages and that judgment in favor of Plaintiffs and the members of the Classes be entered against Defendants;

d.   Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

CLASS ACTION COMPLAINT

1          e.     Defendants, their affiliates, successors, transferees, assignees and other

2    officers, directors, partners, agents and employees thereof, and all other persons acting or

3    claiming to act on their behalf or in concert with them, be permanently enjoined and restrained

4    from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or

5    combination alleged in this Complaint, or from entering into any other contract, conspiracy, or

6    combination having a similar purpose or effect, and from adopting or following any practice,

7    plan, program, or device having a similar purpose or effect;

8          f.     Plaintiffs and the members of the Classes be awarded restitution, including

9    disgorgement of profits Defendants obtained as a result of their acts of unfair competition and

10   acts of unjust enrichment;

11         g.     Plaintiffs and the members of the Classes be awarded pre- and post-

12   judgment interest as provided by law, and that such interest be awarded at the highest legal rate

13   from and after the date of service of this Complaint;

14         h.     Plaintiffs and the members of the Classes recover their costs of suit,

15   including reasonable attorneys' fees, as provided by law; and

16         i.     Plaintiffs and members of the Classes have such other and further relief

17   as the case may require and the Court may deem just and proper.

18   ## XVI.   DEMAND FOR JURY TRIAL

19         Plaintiffs demand a trial by jury, pursuant to Federal Rule of Civil Procedure 38(b), of

20   all issues so triable.

21   Dated: November 4, 2019       */s/ Christopher T. Micheletti*

22         Christopher T. Micheletti (SBN 136446)
      Judith A. Zahid (SBN 215418)

23         Qianwei Fu (SBN 242669)
      **ZELLE LLP**

24         44 Montgomery Street, Suite 3400
      San Francisco, CA 94104

25         Telephone: (415) 693-0700
      Facsimile:  (415) 693-0770

26         cmicheletti@zelle.com
      jzahid@zelle.com

27         qfu@zelle.com

28

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James R. Martin (SBN 173329)
Jennifer Duncan Hackett (*pro hac vice forthcoming*)
**ZELLE LLP**
1775 Pennsylvania Avenue, NW, Suite 375
Washington, D.C. 20006
Telephone: (202) 899-4100
jmartin@zelle.com
jhackett@zelle.com

*Attorneys for Plaintiffs and the Proposed Classes*